[No. 47143–6.   En Banc.   April 30, 1981.]

*In the Matter of the Personal Restraint of*
EDWARD R. LITTLE, *Petitioner.*

*Steve Scott, Robert Adelman,* and *John Midgley* of *Institutional Legal Services,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *David R. Minikel, Assistant,* for respondent.

UTTER, J.—Does an escape toll the running of a prisoner's maximum sentence? We hold that it does and that the Board of Prison Terms and Paroles may properly extend the sentence's expiration date.

Petitioner Edward Ray Little was serving a maximum sentence of 15 years when he escaped from a work release facility in 1971. He successfully eluded the Washington authorities for several years, finally surrendering in 1979.

Upon his reincarceration, a disciplinary proceeding was convened pursuant to RCW 9.95.080. At that hearing, the parole board extended the expiration date of his maximum sentence by the period of time he was a fugitive. This changed the expiration date from July 1982 to May 1990.

Several statutes indicate that a sentence does not run for a fugitive. RCW 9.95.060 provides, in pertinent part:

> If such convicted person does not appeal from his conviction, but is at liberty for a period of time subsequent to the signing of the judgment and sentence, or becomes a fugitive, credit on his sentence will begin from the date such convicted person is returned to custody.

Similarly, RCW 9.95.130 states:

> From and after the suspension, cancellation, or revocation of the parole of any convicted person and until his

return to custody he shall be deemed an escapee and a fugitive from justice and no part of the time during which he is an escapee and fugitive from justice shall be a part of his term.

Most relevant to this case is RCW 9.31.090, which provides:

Every person in custody, under sentence of imprisonment for any crime, who shall escape from custody, may be recaptured and imprisoned for a term equal to the unexpired portion of the original term.

This statute, however, fails to clarify whether the "unexpired portion of the original term" refers to the portion following the escape or the recapture.

██ Understanding RCW 9.31.090 is facilitated by RCW 9.95.060 and .130, since they also refer to escape. *See, e.g., Snohomish County PUD 1 v. Broadview Television Co.,* 91 Wn.2d 3, 586 P.2d 851 (1978); *State v. Wright,* 84 Wn.2d 645, 529 P.2d 453 (1974). Both RCW 9.95.060 and .130 indicate that a sentence does not run for a fugitive yet to be incarcerated or on parole. It is likely that the legislature, in using "unexpired portion," intended the same for an escaped prisoner or work releasee. If this were not the legislature's intent, a person could forever avoid his/her punishment by remaining outside the jurisdiction of the State until after the sentence's original expiration date.

Other courts have uniformly agreed a sentence is tolled by a prisoner's escape, and that the time between the escape and reincarceration is not to be considered as part of the term. *See, e.g., Anderson v. Corall,* 263 U.S. 193, 196, 68 L. Ed. 247, 44 S. Ct. 43 (1923); *Phillips v. Dutton,* 378 F.2d 898 (5th Cir. 1967); *Edwards v. Department of Corrections,* 462 F. Supp. 164 (W.D. Va. 1978); *Lionel v. Day,* 430 F. Supp. 384 (W.D. Okla. 1976). In *Wickert v. State Bd. of Prison Terms & Paroles,* 13 Wn. App. 917, 538 P.2d 826 (1975), the court held that time served in a county jail, pursuant to an escape conviction, would not be credited to the defendant's original felony sentence.

Petitioner argues in response that RCW 9.31.090 is triggered only if the prisoner is convicted of escape. He first

contends that RCW 9.31.090 was originally intended as part of the criminal code, and hence is a criminal statute imposing a criminal penalty. Because criminal penalties are imposable only by the courts, he claims that RCW 9.31.090 cannot be used unless there is an escape conviction.

He next refers to RCW 72.65.070, which provides in significant part:

> Any prisoner approved for placement under a work release plan who wilfully fails to return to the designated place of confinement at the time specified shall be deemed an escapee and fugitive from justice, and upon conviction shall be guilty of a felony and sentenced in accordance with the terms of chapter 9.31 RCW.

From that, and inasmuch as RCW 9.31.090 is the only remaining provision in RCW 9.31, it is urged that RCW 9.31.090 is the exclusive penal statute for the felony created by RCW 72.65.070.

This analysis is unacceptable. If petitioner's reading of RCW 9.31.090 is correct, an equal protection issue arises. His reading would grant escapees from work release facilities the right to a criminal conviction before they could be required to serve the remaining portion of their terms. Parolees and those recently convicted but not yet incarcerated, on the other hand, do not have that same opportunity. *See* RCW 9.95.060 and .130.

His reading of the statute would also prevent the State from reincarcerating an escaped work releasee unless it prosecuted him/her for escape. The legislature could hardly have intended that result.

Furthermore, RCW 9.31.090 has not been construed as the exclusive criminal penalty for work release escapees. In *State v. Yallup,* 25 Wn. App. 603, 608 P.2d 651 (1980), the Court of Appeals held work releasees could be prosecuted for the felony of escape, as provided in RCW 9A.76. If petitioner were correct, an escapee from a work release facility who is recaptured, charged and convicted of escape, could only receive a maximum penalty of the time remaining on the original sentence.

Finally, RCW 72.65.070 refers to RCW 9.31 generally, not RCW 9.31.090 specifically. At the time RCW 72.65.070 was promulgated, all the felony escape statutes now in RCW 9A.76 were a part of RCW 9.31. It is likely that the legislature intended RCW 72.65.070 to refer to the felony provisions formerly in RCW 9.31, but now codified in RCW 9A.76.

We believe both the apparent legislative intent and language of RCW 9.31.090, as well as RCW 9.95.060 and .130, suggest that a fugitive's sentence does not run while on escape, and conclude that a conviction is not a condition precedent for RCW 9.31.090.

Petitioner further argues that the board has no authority to affect the maximum sentence. That statement is correct. *See, e.g., Honore v. State Bd. of Prison Terms & Paroles,* 77 Wn.2d 697, 700, 466 P.2d 505 (1970). However, the board did not alter the court imposed sentence of 15 years, it only altered its expiration date. *Honore* does not prohibit this action.

■ An administrative agency, like the board, has only those powers granted it by the legislature. *Cole v. State Utils. & Transp. Comm'n,* 79 Wn.2d 302, 306, 485 P.2d 71 (1971). Although RCW 9.95 does not expressly give the board the power to alter expiration dates, this power resides in the board by necessary implication.

■ RCW 9.95 requires the court to fix the maximum term of a person's sentence. RCW 9.95.010. The person is then transferred to the superintendent of the appropriate institution. RCW 9.95.020. After the admission of the convicted person to the institution, "the board of prison terms and paroles . . . fix[es] the duration of his confinement." RCW 9.95.040. The board's term, however, cannot "exceed the maximum provided by law for the offense . . ." RCW 9.95.040, which means that

> Any convicted person undergoing sentence in the penitentiary or the reformatory, not sooner released under the provisions of this chapter, shall, in accordance with the provisions of law, be discharged from custody on

serving the maximum punishment provided by law for the offense of which such person was convicted, or the maximum term fixed by the court where the law does not provide for a maximum term.

RCW 9.95.100.

The above statutory scheme does not mention expiration dates. The scheme, however, envisions that when a person is sentenced to the Department of Social and Health Services, the board will establish a date upon which the maximum term will expire. Setting a specific expiration date ensures no time is served beyond the maximum sentence. As noted by the State, an expiration date is "a translation of the term of years into a usable guidepost. It [makes] an abstraction into a concrete fact." Brief of Respondent, at 4.

If, as indicated above, the sentence does not run while one has escape status, then the board should be able to redetermine the expiration date so long as the prisoner does not remain under the custody of DSHS beyond the term of years set by the court or statute. *See* RCW 9.95.100. Because the board is the agency delegated with responsibility for administratively setting the date in the first instance, it must be able to administratively correct it to incorporate the escape time. Such was implicitly recognized in *Wickert v. State Bd. of Prison Terms & Paroles, supra* at 918.

The following analysis, though referring to the escape of a parolee, is equally applicable to this case.

> Expiration of the maximum term is not a fixed date to be measured from the date of sentence, but by expiration of the maximum term of punishment as imposed by the court. Therefore, if a statute suspends the running of the term it also affects a contemplated expiration date.
>
> Since the parole board retains custody throughout the maximum term it has the discretion upon return to custody of a parole escapee to require him to serve out his maximum term. By the terms of the statute the time spent as an escapee is not a part of his term. This, in effect, changes the expiration date of release but does not alter the maximum term of punishment.

Attorney General Opinion, Jan. 13, 1955. This analysis has been uniformly accepted for escaped parolees. *See, e.g., Rogoway v. Warden,* 122 F.2d 967 (9th Cir. 1941); *Ryder v. Perini,* 20 Ohio St. 2d 3, 251 N.E.2d 608 (1969).

Applying that analysis to this issue, we believe the board may administratively redetermine expiration dates to ensure that a convicted person remains within the custody of DSHS for his/her maximum term of punishment. *See Wickert v. State Bd. of Prison Terms & Paroles, supra.*

Petitioner finally argues that allowing the board to redetermine his sentence would violate several constitutional rights. This argument might have merit if his characterization of the issue were correct. His constitutional arguments reflect his belief that the board summarily, without a trial, convicted him of escape and increased his sentence as punishment. Since the board only extended the expiration date of the original sentence, no constitutional issues exist.

We therefore affirm the parole board's action.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, DOLLIVER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.